**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**FLOYD B. MOBLEY,**

       **Plaintiff,**

**v.**                                                    **Civil Action No. 2:06cv139**

**THE CITY OF CHESAPEAKE, VIRGINIA,**

**and**
**THE CITY OF CHESAPEAKE POLICE**
**DEPARTMENT,**

**and**
**OFFICER JAMES J. BLOUNT,**

       **Defendants.**

<u>**ORDER AND OPINION**</u>

This matter is before the court on defendants' joint motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). After examination of the briefs and record, the court determines that oral argument is unnecessary because the facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. For the reasons set out herein, defendants' motion is **GRANTED**, with prejudice, thereby terminating this matter in favor of defendants. Additionally, because defendants' motion to dismiss is granted, plaintiff's motion for enlargement of time and motion for default judgment are deemed **MOOT**.

**I. Factual and Procedural Background**

Plaintiff Floyd B. Mobley, proceeding <u>pro se</u>, filed the instant action pursuant to 42

U.S.C. § 1983, which authorizes civil actions to redress the deprivation of Federal Constitutional rights under color of state or local law.  Plaintiff's complaint asserts that his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated by the City of Chesapeake, Virginia, the Chesapeake Police Department, and Chesapeake Police Officer James J. Blount.  Plaintiff contends that the City and the Police Department "subjected plaintiff to continuous bad faith police harassment as a matter of official policy and custom" (Compl. ¶ 2).  Plaintiff claims that such harassment occurred over a period of twenty years and involved numerous arrests and searches that were unlawful, including the unlawful seizure of plaintiff's commercial motor vehicle license which prohibited him from earning a living in his chosen profession (Compl. ¶ 6). Plaintiff's claim against Officer Blount is related to plaintiff's most recent arrest, alleging that Blount unlawfully arrested plaintiff for public drunkenness on March 14, 2004.[1]

Although plaintiff's complaint alleges a continuing "custom" of civil rights abuses by the Chesapeake Police and seeks 10 million dollars in damages for "20 years of continuous harassment," the most pertinent facts to the resolution of this matter relate to plaintiff's March 14, 2004, arrest.  On such date, plaintiff was apparently drinking at the "33rd Precinct Restaurant and Lounge," and after being asked to do so, plaintiff refused to leave.  Officer Blount arrived at the scene, and after speaking with plaintiff, Officer Blount arrested him for public drunkenness. Although it is unclear whether plaintiff was told that he was under arrest while inside the bar or after he was escorted outside by Officer Blount, it is undisputed that plaintiff was not handcuffed or searched until he was outside.  Nowhere in plaintiff's complaint or reply brief does plaintiff

---

[1] Plaintiff's complaint lists the date of his most recent arrest as March 14, <u>2003</u>, whereas plaintiff's reply memorandum, more definite statement, and all other documents in the record list the arrest date as March 14, <u>2004</u>.  As plaintiff's complaint would be untimely if the arrest occurred in 2003, the court will assume that plaintiff was arrested on March 14, 2004.

contend that he was not drunk in public;[2] rather, plaintiff contends that the police did not have the right to search him incident to such crime as plaintiff contends that being drunk in public is merely a "summons/citation" offense. When plaintiff was searched incident to arrest, a small bag of marijuana was found in his possession. Prior to plaintiff's March 14, 2004, arrest, plaintiff's most recent arrest occurred in 1999.

Plaintiff filed his complaint on March 13, 2006, just prior to the expiration of the two year statute of limitations applicable to the challenge of his March 14, 2004, arrest. On April 17, 2006, defendants filed a motion to dismiss and subsequent to receiving plaintiff's more definite statement, on May 18, 2006, defendants filed a supplemental motion to dismiss, adding a statute of limitations argument related to all arrests prior to 2004. On June 7, 2006, plaintiff filed a reply brief in opposition to defendants' motion to dismiss and defendants thereafter filed a short rebuttal. In addition to the fully briefed motion to dismiss, there are two other motions pending before the court; on July 31, 2006, plaintiff filed both a motion for enlargement of time to file initial disclosures and a motion for default judgment. Defendants oppose both motions.

---

[2] Plaintiff appears to suggest in his reply brief that he was not "in public" when he was inside the bar but was forced "into the public" by police in order to arrest him. Additionally, plaintiff highlights a slight discrepancy between two of Officer Blount's accounts of the March 14, 2004, arrest as in one instance Blount stated that he arrested plaintiff inside the bar, and in another stated that plaintiff was arrested outside the bar. However, the discrepancy in accounts and the location of plaintiff's arrest are immaterial because plaintiff's arrest was lawful whether it occurred inside or outside of the bar. See, e.g., Crislip v. Com., 37 Va. App. 66, 72, 554 S.E.2d 96, 98-99 (Va. App. 2001) (concluding that "in public" under § 18.2-388 includes "places open to public accessibility" as well as places "in open view of nearby neighboring homes and the public street"); Rogers v. Pendleton, 249 F.3d 279, 293 (4th Cir. 2001) (citing Commonwealth v. Osterhoudt, Crim. No. 6620, 1990 WL 751049, at *1 (Va. Cir. Ct. Jan. 25, 1990)) ("[T]he majority view defines a 'public place' as 'a place where the public has a right to go and to be . . . .'").

3

## II.  Standard of Review

A complaint should not be dismissed for failing to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).  As a district court's role at the 12(b)(6) stage is to test the "legal sufficiency of the complaint, and not the facts in support of it," the court must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations."  Eastern Shore Markets, Inc. v. J.D. Associates Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000) (citations omitted).  While the court must view the facts in the light most favorable to the plaintiff, the court is not bound with respect to the complaint's legal conclusions.  Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991).  Furthermore, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Markets, 213 F.3d at 180.

## III.  Analysis

Plaintiff's complaint advances numerous allegations against the City of Chesapeake and the Chesapeake Police Department purportedly documenting twenty years of police harassment. However, prior to considering such claims, the court notes that the Chesapeake Police Department is not an entity subject to suit and must therefore be dismissed.  Although the City of Chesapeake may be sued, the City may only be found liable if it caused a deprivation of plaintiff's rights as a result of an official policy or custom.  Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999).  Although plaintiff has alleged in his complaint that his rights were deprived

based on an official custom, plaintiff's claims against the City are barred by the statute of limitations and must therefore be dismissed.

With respect to plaintiff's claims against Officer Blount, which are timely, such claims are not cognizable in this court as they would necessarily call into question the validity of a prior conviction.  Furthermore, plaintiff relies on several faulty legal conclusions which even at this stage in the proceedings, the court is not required to accept as true.  See Eastern Shore Markets, 213 F.3d at 180.  Most notably, plaintiff incorrectly contends that full custody arrest on public drunkenness, a class 4 misdemeanor, is contrary to the arrest procedure mandated by the Virginia Code (Compl. ¶¶ 6.A, 6.C; More Definite Stmt. ¶¶ 1.E, 3).  Additionally, plaintiff incorrectly asserts that the suspension of his commercial driver's license was an improper punishment imposed without due process of law (Compl. ¶¶ 6.E to 6.H; More Definite Stmt. ¶¶ 5-6).[3]

### A.  Immunity

Defendants correctly assert that plaintiff cannot proceed against the City of Chesapeake Police Department as it is not an entity subject to suit, but rather, is merely an arm of the City. Hearn v. Hudson, 549 F. Supp. 949, 952 n.1 (W.D. Va. 1982); Estate of Harris v. Arlington County, No. 99-CV-1144, 2000 WL 34477900, at *3 (E.D. Va. Jan. 14, 2000) (unpublished); see Young v. City of Norfolk, 62 Va. Cir. 307, 2003 WL 21730724, No. L03-931, at *2 (Va. Cir. Ct. Jul. 17, 2003) ("[T]he City Attorney's Office and the Norfolk Police Department . . . are not

---

[3] Plaintiff's complaint also advances a claim that he was arrested numerous times under an unconstitutional statute (Compl. ¶ 6.B).  However, plaintiff's more definite statement clarifies that such allegation is unrelated to plaintiff's March 14, 2004, arrest, but instead challenges the "Interference with a Police Officer" statute (More Definite Stmt. ¶ 2).  Because plaintiff's most recent arrest for interfering with a police officer appears to have occurred in 1986, such claim is timebarred.  Similarly, plaintiff's allegations regarding warrantless searches relate to events occurring prior to 2004 and are similarly untimely (Compl. ¶ 6.D; More Definite Stmt. ¶ 4).

separate legal entities with the capacity to sue or be sued, but, rather, are parts of the City.").

Therefore, plaintiff's claims against the Chesapeake Police Department are **DISMISSED**.[4]

### B. Statute of Limitations

Although Federal Rule of Civil Procedure 12(b)(6) "invites an inquiry into the legal

sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein,"

dismissal based on an affirmative defense "nevertheless is appropriate when the face of the

complaint clearly reveals" the existence of such defense. Brooks v. City of Winston-Salem,

N.C., 85 F.3d 178, 181 (4th Cir. 1996); see American Hotel Mgmt. Associates, Inc. v. Jones, 768

F.2d 562, 568-69 (4th Cir. 1985) ("[L]imitations can be resolved as a matter of law if undisputed

facts establish the time when the cause of action accrued.").  Here, plaintiff filed suit

on March 13, 2006, challenging an arrest occurring on March 14, 2004, as well as arrests

occurring from 1979-1999.  Because there is no federal limitations period for claims brought

pursuant to 42 U.S.C. § 1983, the state limitations period which governs personal injury actions

must be applied; Virginia has a two-year limitations period for such claims.  Williams v. Giant

Food Inc., 370 F.3d 423, 429 (4th Cir. 2004); Lewis v. Richmond City Police Dept., 947 F.2d

733, 735 (4th Cir. 1991); Va. Code Ann. § 8.01-243(A).  Therefore, plaintiff's claims based on

events occurring prior to March 13, 2004, must be dismissed as the face of plaintiff's complaint

and more definite statement reveal that such claims are barred by the statute of limitations.

---

[4] In the alternative, to the extent that the Chesapeake Police Department is subject to suit, like plaintiff's claims against the City, plaintiff's claims against the Police Department are dismissed as untimely.  Additionally, although it is premature to discuss Officer Blount's potential to establish a defense of qualified immunity, the court notes that such inquiry would be irrelevant at any stage of the proceedings because, as discussed in Part C below, plaintiff is unable to establish a violation of his constitutional rights.  See Saucier v. Katz, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

Defendants' position that plaintiff's claims relating to events prior to 2004 are time barred is argued in their supplemental motion to dismiss, affording plaintiff the opportunity to respond to such allegation.  Plaintiff's response, although citing no caselaw, contends that the "Continuing Violation Doctrine" permits the court to consider the otherwise timebarred claims because the final overt act, the March 14, 2004, arrest, occurred within the limitations period. Turning to caselaw discussing such doctrine, the Fourth Circuit has recognized that in order for the continuing violation doctrine to apply, a plaintiff "must establish that the unconstitutional or illegal act was a fixed and continuing practice."  Nat'l Advertising Co. v. City of Raleigh, 947 F.2d 1158, 1166-67 (4th Cir. 1991) (quoting Perez v. Laredo Junior College, 706 F.2d 731, 733 (5th Cir.1983)).  Likewise, in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002), the Supreme Court resolved a circuit split involving the application of the continuing violation doctrine by narrowing the circumstances in which such doctrine applies.  Specifically, the Court rejected the standard that merely requires a plaintiff to show a "relation" between separate acts, concluding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  Id.  The court did, however, recognize the difference between easily identifiable discrete acts, "such as termination, failure to promote, denial of transfer, or refusal to hire" and hostile work environment claims, which by "[t]heir very nature involve[] repeated conduct."  Id. at 114-15.  Clarifying the difference, the Court noted that a hostile work environment claim "cannot be said to occur on any particular day," but rather, "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."  Id. at 115.

Subsequent to the Supreme Court's Morgan opinion, in Williams v. Giant Food Inc., the Fourth Circuit was tasked with determining whether an "allegation of a 20-year 'pattern or

practice' of discrimination" was akin to a hostile work environment claim or was rather merely a series of discrete discriminatory acts that should be considered separately. <u>Williams</u>, 370 F.3d at 429-30. In <u>Williams</u>, the plaintiff alleged that she was repeatedly passed over for promotions over a period of twenty years based on a broad pattern of discrimination at her workplace. The Fourth Circuit concluded that "even if [the plaintiff] is correct that [her employer's] failures to promote her during the applicable limitations period were part of a broader pattern or practice of discrimination, those failures to promote remain discrete acts of discrimination" and therefore, such claims were only cognizable if brought within the limitations period. <u>Id.</u> at 429. The <u>Williams</u> opinion noted that the Supreme Court had "left open the question whether the continuing violation doctrine applies to 'pattern or practice' claims," and the Fourth Circuit concluded that there was no reason to depart from the general rule set forth in <u>Morgan</u> just because a plaintiff alleges that multiple discriminatory acts were part of a broader "pattern or practice" of discrimination. <u>Id.</u> at 430.

Here, although plaintiff attempts to portray his claims as "continuous harassment," plaintiff's allegations are wholly unlike a hostile work environment claim; rather, they closely parallel the "pattern or practice" allegations in <u>Williams</u>. Specifically, here, like in <u>Williams</u>, each time plaintiff's rights were allegedly deprived, plaintiff could have filed a lawsuit against the City or the arresting officers for the unconstitutional search or arrest. The legal ability to file suit after a single wrongful arrest or single illegal search is undeniable, thus establishing that each allegation advanced in plaintiff's complaint is discrete from the rest. As a result, even assuming that plaintiff was in fact deprived of his constitutional rights on multiple occasions from 1979-1999 and that such deprivations were "related," plaintiff is unable to justify a deviation from the general rule set forth in <u>Morgan</u> merely by categorizing his claims as "continuous harassment."

Furthermore, again assuming that plaintiff was wrongfully arrested, had his home searched without a warrant, and was charged with crimes that were later nolle prossed or otherwise dismissed, plaintiff's complaint and more definite statement indicate that, prior to his March 14, 2004, arrest, plaintiff's most recent arrest occurred in 1999.  Such fact definitively establishes that any harassment that he may have suffered was certainly not "continuous."  Therefore, even considering the facts and potential inferences that can be drawn from such facts in plaintiff's favor, plaintiff's claims relating to events occurring prior to 2004 are barred by the statute of limitations pursuant to the Fourth Circuit's holding in <u>Williams v. Giant Food</u>.[5]

## C.  Plaintiff's March 2004 Arrest

Plaintiff alleges that he was arrested by Officer Blount on March 14, 2004, "on the charge of appearing in public in an intoxicated condition under city ordinance 46-157 a class 4 misdemeanor which was dismissed" (Compl. ¶ 7).  Plaintiff further alleges that such "full custody arrest by Officer Blount was without probable cause and used to circumvent Virginia's warrant requirement for a search because under Virginia's Court Rules and Procedure . . . this type of offence is merely a summons/citation related offence and searches in connection with this

---

[5] In the alternative, the discussion that follows concludes that plaintiff is wholly unable to establish that his constitutional rights were deprived in March of 2004 as the plaintiff was convicted of possession of marijuana and such conviction has not been called into question. Therefore, even if plaintiff's allegations of continuous police harassment were akin to a hostile work environment claim, thus permitting plaintiff to recover for harassment occurring outside the limitations period by establishing that at least one act was committed within the limitations period, here, because plaintiff has failed to establish that his rights were deprived within the limitations period, he is unable to recover for acts occurring prior to such period.  <u>See</u> <u>Morgan</u>, 536 U.S. at 117 ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

type of [sic] are unreasonable" (Compl. ¶ 8).[6]  Plaintiff's reply brief further alleges that Officer

Blount's account of plaintiff's arrest is inconsistent as to whether plaintiff was arrested prior to

or subsequent to being escorted outside of the bar; furthermore, plaintiff claims that Officer

Blount intentionally falsified the amount of amount of marijuana recovered from plaintiff in

order to bolster his case against plaintiff.[7]

Although the procedural posture of this case requires the court to accept as true the facts

alleged in the complaint, plaintiff nevertheless fails to state a claim upon which relief can be

granted as plaintiff's claims associated with his March 14, 2004, arrest are legally foreclosed by

Heck v. Humphrey, 512 U.S. 477, 487 (1994), and Ballenger v. Owens, 352 F.3d 842, 846-47

(4th Cir. 2003).  In Heck, the Supreme Court established the rule that a plaintiff cannot recover

monetary damages in a § 1983 action for allegedly unconstitutional convictions or imprisonment

where a finding in plaintiff's favor would necessarily call into question the validity of the

underlying conviction or sentence.  Heck, 512 U.S. at 482-83.  The test articulated by the Court

---

[6] Plaintiff's complaint appears to attempt to cite to the Code of Virginia, stating that his arrest was in violation of section "19.2-72 (2) C."  However, elsewhere in plaintiff's complaint plaintiff cites section "19.2-74" and plaintiff's reply brief twice cites to section "19.2-74, A, 2, (C)," apparently all for the same proposition.  The court notes that the Code section plaintiff appears to be citing is Va. Code Ann. § 19.2-74(A)(2), which governs arrest procedures for misdemeanors.

[7] Although the court does not weigh evidence at this stage in the proceedings, the record plainly suggests that the allegations raised in plaintiff's reply are either immaterial or false.  First, as previously discussed in footnote 2, it is immaterial whether plaintiff was arrested inside the bar or outside as both qualify as "in public" for the purposes of the statute.  Second, although plaintiff alleges that Officer Blount falsified evidence because the police report indicates the quantity of marijuana seized as "1," yet testimony at plaintiff's trial stated that he was found in possession of 7.4 grams, a cursory review of the police report and police certificate of analysis reveal that "1 baggie w/ suspected marijuana" was seized and, after analysis, it was determined that the "1 baggie" contained 7.4 grams of marijuana.  Plaintiff's allegation that Officer Blount manufactured evidence is an unsupported supposition that is disproved by the facts.

requires district courts to "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. at 487.  In Ballenger v. Owens, the Fourth Circuit applied the test set forth in Heck, affirming the district court's dismissal with prejudice of the plaintiff's complaint.

In Ballenger, the plaintiff's vehicle was stopped by a State Trooper for following another vehicle too closely.  After the Trooper detected the odor of marijuana, he searched the plaintiff's vehicle, discovered drugs and a gun, and placed the plaintiff under arrest.  Ballenger, 352 F.3d at 843-44.  Thereafter, the plaintiff was convicted of cocaine trafficking and, while serving his sentence, the plaintiff filed a § 1983 action alleging that he was deprived of his Fourth, Fifth, and Fourteenth Amendment rights because: (1) he was searched without probable cause; (2) the following-to-closely violation requires an accident because no mathematical formula can otherwise determine when it occurs; and (3) the officer searched his vehicle with deliberate indifference to the law.  Id. at 844.  With an apparently abbreviated analysis, the district court dismissed the plaintiff's § 1983 case pursuant to the principles set forth by the Supreme Court in Heck.

Although the district court in Ballenger never documented its conclusion that a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence, the Fourth Circuit affirmed the dismissal of the case, explaining:

> [T]he suppression of the evidence seized pursuant to the challenged search in this § 1983 case would necessarily imply invalidity of the criminal conviction because the doctrines of independent source, inevitable discovery, harmless error, and other similar doctrines would not save the criminal conviction. The cocaine seized was uniquely available from the alleged illegal search, and if it were suppressed as evidence, there would be no evidence to convict Ballenger for drug trafficking . . . . If Ballenger succeeds in demonstrating in this § 1983 case that his traffic stop was

11

illegal, the illegality of the search would require the suppression of the evidence
seized. . . .  [However], [i]t was possession of the cocaine discovered in
Ballenger's automobile that constituted the criminal offense, and were that
evidence to be suppressed by reason of the illegality of the search, the conviction
could not be salvaged. Because a judgment for Ballenger in this case would
necessarily imply invalidity of his conviction, the case at this stage amounts to no
more than an unexhausted habeas corpus claim that collaterally attacks his
conviction.  This is not a cognizable role for § 1983.

Id. at 846-47 (citations omitted).  Likewise, here, a judgment in favor of plaintiff would

necessarily imply the invalidity of his conviction for possession of marijuana.  First, here, as in

Ballenger, plaintiff's initial encounter with police was based on an offense unrelated to drugs,

yet incident to a search for such offense, drugs were found in his possession.  Furthermore, here,

as in Ballenger, plaintiff was convicted of the drug crime and then sought to later challenge the

initial arrest and search.  Specifically, in Ballenger the plaintiff claimed that there was no

probable cause to search, the following-too-closely violation was infirm, and the officer

knowingly ignored the law in order to search him.  Likewise, here, plaintiff contends that Officer

Blount searched him without probable cause, that the arrest for public drunkenness was infirm as

it was only a class 4 misdemeanor, and that Officer Blount and the entire Chesapeake Police

Department knowingly ignored the law and deprived him of his rights.  Thus, as in Ballenger,

here, plaintiff's complaint must be dismissed because the marijuana seized "was uniquely

available from the alleged illegal search, and if it were suppressed as evidence, there would be no

evidence to convict [Mobley] for drug [possession]."  Id. at 847.  Because plaintiff has not

alleged that his drug conviction was set aside or otherwise called into question, he cannot recover

damages in a § 1983 action for the alleged illegal search.

In the alternative, to the extent that plaintiff's claims are not barred by Heck and

Ballenger, plaintiff makes incorrect legal conclusions that bar his claims related to the March 14,

12

2004, arrest.  Notably, plaintiff is correct that, under the Virginia Code, Class 3 and 4 misdemeanors are generally punishable by summons, not a full custody arrest.  <u>See</u> Va. Code. Ann. § 19.2-74.  However, the Code section that establishes such rule also expressly exempts public drunkenness from the purview of the rule, stating:

> Whenever any person is detained by or is in the custody of an arresting officer for a violation of any county, city, or town ordinance or of any provision of this Code, punishable as a Class 3 or Class 4 misdemeanor or any other misdemeanor for which he cannot receive a jail sentence, <u>except</u> as otherwise provided in Title 46.2, <u>or to the offense of public drunkenness as defined in § 18.2-388</u>, the arresting officer shall take the name and address of such person and issue a summons or otherwise notify him in writing to appear at a time and place to be specified in such summons or notice.  Upon the giving of such person of his written promise to appear at such time and place, the officer shall forthwith release him from custody.  <u>However, if any such person shall fail or refuse to discontinue the unlawful act, the officer may proceed according to the provisions of § 19.2-82.</u>

Va. Code. Ann. § 19.2-74(A)(2) (emphasis added); <u>see</u> <u>Hudson v. Director, Dept. of Corrections</u>, No. 04-4838, 2005 WL 2861038, at *11 (Va. Cir. Ct. May 19, 2005) (unpublished) ("Virginia Code § 19.2-74(A)(2) specifically excludes from its coverage the offense of public drunkenness. Because of their boisterous nature, the police are permitted to make custodial arrests of intoxicated persons, and <u>when doing so, they may search or question those persons incident to that arrest</u>.") (emphasis added).  Furthermore, even if such exception did not exist, as highlighted in the statute above, an officer may arrest a suspect if they "fail or refuse to discontinue the unlawful act," and here, plaintiff's explains that "Officer Blount . . . <u>forced</u> plaintiff to walk outside [of the bar] and [plaintiff] <u>refused to leave</u>" so Officer Blount arrested him (Pl. Reply 3-4) (emphasis added).  As a result, plaintiff is unable to establish that he was wrongfully searched incident to arrest as the Virginia Code permits a warrantless arrest either for an individual who is

found drunk in public, or, an individual who refuses to discontinue an unlawful act.[8]

Plaintiff's final assertion, that he was denied due process with respect to the revocation of his commercial driver's license, also fails as a matter of law (Compl. ¶¶ 6.E to 6.G).  Plaintiff's driver's license was suspended pursuant to section 18.2-259.1 of the Virginia Code, which requires that, upon conviction of a drug crime, a defendant's driver's license is suspended for a period of six months; such suspension is imposed in addition to any penalty ordered by the court for the underlying drug conviction.  Although the Virginia Code provides an exception permitting an individual to obtain a restricted license in "compelling circumstances," the Code forbids such license from permitting an individual to drive commercial vehicles.  Va. Code Ann. § 18.2-259.1(C).  As plaintiff is prohibited from using this forum in an attempt to collaterally attack his drug conviction, he may only argue that the Virginia statute revoking his commercial license violates the U.S. Constitution.  Notably, although "the right to operate a motor vehicle is a conditional privilege, which may be suspended or revoked in the interest of public safety under the police power of the Commonwealth, . . . [such] right may not be revoked or suspended without due process of law."  Walton v. Com., 255 Va. 422, 428, 497 S.E.2d 869, 873 (1998); see Bell v. Burson, 402 U.S. 535, 539 (1971).

In Bell v. Burson, the Supreme Court not only established that a driver's license cannot

---

[8] It should be noted that the Supreme Court has addressed a similar scenario and expressly found that arrests for even minor crimes do not run afoul of the Fourth Amendment. Atwater v. City of Lago Vista, 532 U.S. 318 (2001).  In Atwater, the plaintiff was taken into a full custody arrest for violating a seatbelt law with a maximum penalty of $50; the Court stated: "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  Id. at 354; see Maryland v. Pringle, 540 U.S. 366, 370 (2003) ("A warrantless arrest of an individual in a public place for . . . a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause.").

be revoked or suspended without due process, but also established that notice and the right to be heard <u>prior to</u> revocation or suspension was required.  <u>Bell</u>, 402 U.S. at 542.  However, the Supreme Court's determination that a prior hearing is constitutionally required must be viewed in conjunction with the state law at issue.  In <u>Bell</u>, the challenged statute worked to automatically suspend an uninsured driver's license subsequent to an accident unless the uninsured driver posted security sufficient to pay any judgments that may result; that is, the license suspension occurred prior to a finding of fault.  <u>Id.</u> at 540.  The Supreme Court concluded that, prior to a license suspension, due process entitled uninsured drivers to an inquiry as to whether there was a "reasonable possibility of judgments" against the uninsured driver resulting from the accident. <u>Id.</u> at 542.

        In contrast to <u>Bell</u>, here, the challenged statute seeks to "protect persons using the Commonwealth's highways" and a license suspension only takes effect <u>after</u> a defendant has been convicted of a crime that the legislature has determined makes that person a danger to the Commonwealth's highways.  <u>Walton</u>, 255 Va. at 428, 497 S.E.2d at 873.[9]  Similar to the instant matter, in <u>Scott v. Hill</u>, 407 F. Supp. 301, 304 (E.D. Va. 1976), this court differentiated the

---

        [9]  In <u>Walton v. Com.</u>, the Virginia Supreme Court analyzed the constitutionality of the statute that plaintiff seeks to challenge, concluding:

> Although Code § 18.2-259.1 mandates suspension of a driver's license for a drug offense that does not involve the operation of a motor vehicle, it is reasonable to conclude that a purpose of the statute is to protect persons using the Commonwealth's highways.  As the Court of Appeals observed, the General Assembly "could reasonably assume that a person who possesses illegal substances would use those substances and could operate a motor vehicle while under the influence of [the] substances." <u>Walton</u>, 24 Va. App. at 761, 485 S.E.2d at 643.  We conclude, therefore, that the General Assembly, in enacting Code § 18.2-259.1, acted in the interest of public safety. Resolving all reasonable doubt in favor of the statute's validity, we hold that the statute satisfies the rational basis test for substantive due process.

<u>Walton</u>, 255 Va. at 428, 497 S.E.2d at 873.

framework at issue in <u>Bell</u> from license suspensions occurring <u>after</u> an individual has the opportunity for a hearing on the underlying convictions that prompted the suspension. <u>Scott</u>, 407 F. Supp. at 304. The <u>Scott</u> holding explained that if "a State may base an operator's license suspension on the outcome of a civil action for damages brought by the injured party," as suggested by the Supreme Court in <u>Bell</u>, then "it seems equally permissible, so far as federal law is concerned, for Virginia to base its suspension upon [criminal drug] convictions." <u>Id.</u>; <u>see</u> <u>Dixon v. Love</u>, 431 U.S. 105, 114-15 (1977) (recognizing the "important public interest in safety on the roads and highways, and in the prompt removal of a safety hazard" as well as the fact that even after <u>Bell</u>, "courts have sustained suspension or revocation of driving privileges, without prior hearing, where earlier convictions were on the record").

Here, plaintiff's commercial license was not suspended without notice or hearing; rather, plaintiff was afforded the right to a jury trial on his underlying drug crime and the Virginia Code afforded plaintiff notice that if convicted of such crime his commercial license would be forfeited for a period of six months. Although the Virginia Code affords plaintiff the ability to seek a restricted license from the court, the Code prohibits a restricted license from permitting an individual to drive a commercial vehicle. Va. Code Ann. § 18.2-259.1(C). Therefore, even if plaintiff attempted to obtain a restricted license but was denied a hearing, an allegation not made by plaintiff,[10] he would not have been denied due process with respect to the suspension of his <u>commercial license</u> as the Virginia courts are without authority to grant commercial driving privileges on a restricted license. As a result, plaintiff has failed to state a claim for which relief

---

[10] Plaintiff does state that it was the clerk and not the court that informed him that his license was being suspended; however, he never mentions whether or not he sought to obtain a restricted license for non-commercial driving (More Definite Stmt. ¶ 5.A).

can be granted as he exercised his right to a jury trial on the underlying drug charge, was

unsuccessful at trial, and was therefore mandated by statute to surrender his commercial license

for six months; plaintiff's right to due process was not violated.

### IV. Conclusion

After considering both the timeliness of plaintiff's complaint and the allegations

contained therein, the court concludes that plaintiff's complaint fails to state a claim upon which

relief can be granted.  Plaintiff's claims against the Chesapeake Police Department must be

dismissed as it is not a legal entity subject to suit.  Plaintiff's claims against the City of

Chesapeake are barred by the statute of limitations because the facts advanced by plaintiff

foreclose a claim that plaintiff was subject to a continuous pattern of harassment akin to a hostile

work environment claim, or that plaintiff's rights were deprived at least once within the

limitations period.  Likewise, plaintiff's allegations against Officer Blount fail to state a claim as

plaintiff is legally foreclosed from challenging his search or arrest, and therefore plaintiff is

unable to establish that his rights were deprived.  Additionally, plaintiff has clearly relied on

incorrect legal conclusions as the Virginia Code permits a full custody arrest for the crime of

public drunkenness and plaintiff's jury trial on his drug conviction afforded plaintiff due process

of law with respect to the suspension of his commercial driver's license.

As a result, defendants' motion to dismiss is **GRANTED**.  Accordingly, plaintiff's

complaint is **DISMISSED WITH PREJUDICE**.  Additionally, because defendants' motion to

dismiss is granted, plaintiff's motion for enlargement of time and motion for default judgment

are deemed **MOOT**.

The pro se plaintiff is advised that he may appeal from this final Order by forwarding a

written notice of appeal to the Clerk of the United States District Court, United States

Courthouse, 600 Granby Street, Norfolk, Virginia 23510.  Said written notice must be received by the Clerk within thirty (30) days from the date of this Order.

The Clerk is **REQUESTED** to mail copies of this Order to the pro se plaintiff and to counsel of record for the defendants.

**IT IS SO ORDERED.**

_____/s/_____
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
August 30 , 2006